UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROGER BITTINGER and | : |
| LILIAN BITTINGER, | : |
|     Plaintiffs, | : |
| | : |
| v. | :    No. 3:14cv1255 (DJS) |
| | |
| | : |
| WELLS FARGO, N.A. and | : |
| NATIONAL FIELD | : |
| REPRESENTATIVES, INC., | : |
|     Defendants. | : |

RULING ON MOTIONS TO DISMISS

In their Second Amended Complaint, the plaintiffs, Roger Bittinger and Lilian Bittinger

("Bittingers"), raise claims of breach of contract, negligence, and negligent hiring, training and

supervision against the defendant Wells Fargo, N.A. ("Wells Fargo"). The Bittingers also raise

claims of conversion, statutory theft, and negligence against the defendant National Field

Representatives, Inc. ("NFR"). The jurisdiction of this Court is invoked on the basis of diversity

of citizenship. Both of the named defendants have filed a motion to dismiss all claims against

them. For the reasons stated below, the defendant Wells Fargo's motion to dismiss (doc. # 57) is

granted in part and denied in part, and the defendant NFR's motion to dismiss (doc. # 66)  is

denied.

FACTS[1]

During the time period relevant to this action, the Bittingers were the owners of a single

family residence located at 2 Mohegan Road, Norwich, Connecticut, that was subject to a

mortgage held by the defendant Wells Fargo. In October 2008 Wells Fargo initiated a foreclosure

---

[1]The facts are taken from the Second Amended Complaint, which is the operative
complaint in this action.

action against the Bittingers in the Connecticut Superior Court. For a period of over thirty

months the Bittingers and Wells Fargo engaged in a foreclosure mediation process. This

mediation process was ultimately unsuccessful and a judgment of strict foreclosure was entered

on January 6, 2014. By order of the court in the foreclosure action, the Bittingers were given until

April 1, 2014, to exercise their right of redemption.

As the law date for the foreclosure was approaching, the Bittingers communicated to

Wells Fargo that they were seeking new housing. The Bittingers told Wells Fargo that their

belongings remained in their house even though they were seeking a new residence.[2] During this

period of time, the Bittingers kept their belongings in their house and checked on them

frequently. On or about March 15, 2014, during one of the plaintiffs' routine inspections of their

house, the Bittingers discovered that the locks on the house had been changed and they were

unable to enter their house. The Bittingers immediately contacted Wells Fargo Bittingers and

asked why they had been locked out of their house. An employee of Wells Fargo told them that

Wells Fargo had incorrectly believed that the house had been abandoned and on that basis had

---

[2]The Second Amended Complaint also contains the following paragraph: "Upon information and belief, after the entry of judgment, the Bittingers also communicated with Wells Fargo that they had not abandoned their home and that their belongings still remained within the property." (Doc. # 48, at 9, ¶ 47). "A plaintiff may plead facts alleged upon information and belief 'where the facts are peculiarly within the possession and control of the defendant.'" *Harisch v. Goldberg*, 14-cv-9503 (KBF), 2016 U.S. Dist. LEXIS 39494, at *16 (S.D.N.Y. March 25, 2016) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)). The facts alleged in this paragraph, i.e., the plaintiffs communicated certain information to one of the defendants, would not be "peculiarly within the possession and control of the defendant" and the Court finds that this is not a well-pleaded factual allegation which must be accepted as true for purposes of ruling on the motions to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("When there are well-pleaded factual allegations, a court [considering a motion to dismiss] should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.").

arranged for the locks to be changed.[3] Wells Fargo thereafter sent a new set of keys to the Bittingers. When the Bittingers subsequently reentered their house, they discovered that many of their personal belongings had been stolen and that damage had been done to their propery. The theft of the Bittingers' property occurred during the time period when they were unable to enter the house due to the change in the locks.

Wells Fargo utilized the defendant NFR to effectuate the changing of the locks on the Bittingers' house and has utilized NFR for a similar purpose on a number of prior occasions in multiple locations in multiple states. Pursuant to instructions received from Wells Fargo, NFR, through its own actions or those of an agent or contractor, forcibly entered the Bittingers' house and changed the locks. NFR, through its own actions or those of an agent or representative, stole personal property of the Bittingers.

PROCEDURAL BACKGROUND

The Bittingers filed an action against the defendant Wells Fargo under Connecticut's 'Forcible Detainer Statute' in the Connecticut Superior Court in August 2014. On August 29, 2014, Wells Fargo removed the action to the U.S. District Court on the basis of diversity of citizenship. The plaintiffs, who are citizens of Connecticut, claim damages in excess of $75,000.00. Wells Fargo is a citizen of South Dakota.

On February 4, 2015, the Bittingers filed an Amended Complaint in which they raised the following claims against the defendants Wells Fargo and NFR: trespass, conversion, statutory theft, negligent infliction of emotional distress, intentional infliction of emotional distress,

---

[3]Although this allegation is also made "upon information and belief," the knowledge that the person speaking to the plaintiffs was actually an employee of Wells Fargo may be considered a fact peculiarly within the possession and control of the defendant.

violation of the Fair Debt Collection Practices Act, negligence, violation of the Connecticut

Unfair Trade Practices Act, and conspiracy.

Wells Fargo filed a motion to dismiss all claims against it and NFR filed a motion to

dismiss all claims against it other than statutory theft, conversion, and negligence. U.S. District

Judge Underhill heard argument on the motions to dismiss on August 24, 2015, and ruled on the

motions at the end of that proceeding. As to NFR, Judge Underhill dismissed with prejudice the

claims of trespass, negligent and intentional infliction of emotional distress, violation of the Fair

Debt Collection Practices Act, violation of the Connecticut Unfair Trade Practices Act, and

conspiracy. The conversion, statutory theft, and negligence claims against NFA remained in the

case. As to Wells Fargo, Judge Underhill dismissed with prejudice all claims other than

negligence. The negligence claim was dismissed without prejudice to repleading within thiry

days.

The plaintiffs filed a Second Amended Complaint on September 24, 2015. The Second

Amended Complaint, which is the operative pleading in this case, raises claims of breach of

contract, negligence, and negligent hiring, training and/or supervision against Wells Fargo. It also

repeats the  claims of conversion, statutory theft, and negligence against NFR that had been

included in the Amended Complaint. Both defendants have filed a motion to dismiss all claims

against them in the Second Amended Complaint.

## STANDARD

In considering a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), the district

court must "consider the legal sufficiency of the complaint, taking its factual allegations to be

true and drawing all reasonable inferences in the plaintiff's favor." *Harris v. Mills,* 572 F.3d 66,

71 (2d Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Turkmen v. Ashcroft,* 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

"In accordance with the Supreme Court's decision *Bell Atlantic Corp. v. Twombly*, . . . we apply a plausibility standard, which is guided by [t]wo working principles.  First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Harris*, 572 F.3d at 71-72 (internal quotation marks and citations omitted).

## A. Wells Fargo

As noted above, the Second Amended Complaint raises claims of breach of contract, negligence, and negligent hiring, training and/or supervision against Wells Fargo, which has moved to dismiss all of these claims. The Court will address each of the three claims against Wells Fargo.

i. Breach of Contract

The Bittingers claim that Wells Fargo breached the terms of the mortgage agreement when it authorized the entry into, and changing of the locks at, the Bittingers' house and that those actions resulted in the theft of their personal property. Wells Fargo argues that this claim must be dismissed because: (1) the plaintiffs did not have the leave of the Court to include a breach of contract claim in their Second Amended Complaint, and (2) the entry into the Bittingers' house was authorized by the terms of the mortgage agreement.

Rule 15 of the Federal Rules of Civil Procedure provides that "[a] party may amend its pleading once as a matter of course [within specified periods of time] . . . . In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). The plaintiffs moved for leave to amend their original complaint on December 15, 2014. That motion was granted and the Bittingers filed their first Amended Complaint on February 4, 2015.

At the time he dismissed all claims raised against Wells Fargo in the Amended Complaint, Judge Underhill granted the plaintiffs limited leave to replead. The scope of that leave is reflected in the transcript of the August 24, 2015 proceeding. Having heard argument on the motions, Judge Underhill initially indicated that he was going to dismiss all claims against Wells Fargo with prejudice. (Doc. # 55, at 40:2-14). As to the negligence claim, Judge Underhill stated that "I think the plaintiff has had two shots at Wells Fargo on a negligence theory and it should be dismissed with prejudice." (*Id.* at 40:12-14). After plaintiffs' counsel pointed out that the original Complaint, which had been filed in state court, was limited to a statutory detainer action, and that the plaintiffs had made a claim of negligence for the first time

-6-

in their Amended Complaint, Judge Underhill stated the following:

> No, that's a fair point. I looked back, you're right. So I will
> allow you to replead that once. So put your best allegations of
> fact into an amended . . . claim against Wells Fargo.

(*Id.* at 41:13-16).

Plaintiffs' counsel than inquired whether the Court's limited leave to amend the

negligence claim precluded him from adding a count for negligent hiring. Judge Underhill's

response was, "I'm including negligent hiring as a form of negligence." (*Id.* at 41:20-21). He

subsequently addressed the negligence claim as follows:

> The negligence claim is dismissed without prejudice to
> repleading within 30 days, and that pleading has to have some
> facts that are sufficient to satisfy a theory of negligence
> against Wells Fargo, and we talked about that.

(*Id.* at 42:4-8).

It is clear that the leave to replead granted by Judge Underhill was limited to a claim of

negligence, including negligent hiring. The fact that plaintiffs' counsel felt it necessary to ask

whether the limited leave precluded him from raising a negligent hiring claim in an amended

pleading indicates that counsel was aware of the limited nature of the leave to replead. No

further leave to amend was granted by the Court or sought by the plaintiffs. The Court

concludes that the breach of contract claim is not properly before the Court.

Even if the plaintiffs had been granted leave to add a breach of contract claim to an

amended pleading, the basis of that claim had been effectively determined by Judge Underhill

at the proceeding before him on August 24, 2015. Addressing the various claims raised against

Wells Fargo in the Amended Complaint, Judge Underhill noted that "what we have here . . .

-7-

[are] two types of general claims, [1] claims that nobody should have gone onto the property to do anything and [2] claims that property was stolen." (*Id.* at 11:24-25, 12:1-2). Judge Underhill went on to state that following:

> So the first ones [i.e., claims that nobody should have gone onto
> the property to do anything] are going to be doomed by the fact
> that they are authorized to do what they did. . . .
> Changing the locks are specifically provided for in the agreement.
> That's one thing that is set forth that they can do to protect the
> value of the property. They can go in and they can change the
> lock. There's not anything to interpret about the reasonableness
> of what they did. . . . They went in and they changed the locks.
> This is expressly called for in the agreement in order to allow
> them to protect the value of the property.

(*Id.* at 12:7-9, 14-24).

The mortgage agreement between the Bittingers and Wells Fargo included the following provision:

> If (a) Borrower fails to perform the covenants and agreements
> contained in this Security Instrument; (b) there is a legal
> proceeding that might significantly affect Lender's interest in
> the Property and/or rights under this Security Instrument . . . or
> (c) Borrower has abandoned the Property, then Lender may do
> and pay for whatever is reasonable or appropriate to protect
> Lender's interest in the Property and rights under this Security
> Instrument, including protecting and/or assessing the value of the
> Property, and securing and/or repairing the Property. . . . Securing
> the Property includes, but is not limited to, entering the Property
> to . . . change locks . . . .

(Doc. # 48, at 33-34). There is no dispute that the Bittingers had failed to make payments on their mortgage or that a judgment of foreclosure had entered against them prior to the time action was taken to enter their house and change the locks.

A claim has facial plausibility, and thereby survives a motion to dismiss, only "'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Turkmen,* 589 F.3d at 546 (quoting *Iqbal*, 556 U.S. at 678). For the reasons previously articulated by Judge Underhill, the plaintiffs' breach of contract claim, even if it were properly before the Court, is not plausible on its face. For these reasons, the defendant Wells Fargo's motion to dismiss is granted as to the breach of contract claim.

ii. Negligence

As was previously discussed, Judge Underhill initially indicated that the negligence claim against Wells Fargo would be dismissed with prejudice, but then permitted the plaintiffs to replead their negligence claim. In doing so, he cautioned the plaintiffs that a revised pleading "has to have some facts that are sufficient to satisfy a theory of negligence against Wells Fargo, and we talked about that." (Doc. # 55, at 42:6-8).

The plaintiffs' first Amended Complaint alleged that Wells Fargo breached "a duty to [the] Bittingers to act in an appropriate and reasonable manner with regard to the foreclosure of the Premises." (Doc. # 27, at 9, ¶ 46). At the August 24, 2015 proceeding before Judge Underhill, plaintiff's counsel contended that this duty arose out of a provision in the mortgage agreement stating that actions taken by the Lender to protect its interest in the premises must be "reasonable and appropriate." (Doc. # 55, at 16:3-6, 17-19). Judge Underhill rejected that argument, finding that Wells Fargo "clearly had the right to go in there under the contract . . . [and] that right included expressly the right to change the locks." (*Id*. at 15:12-14). Consequently, Judge Underhill determined that all of the plaintiffs' "claims that nobody should

-9-

have gone onto the property to do anything" were "doomed by the fact that they [Wells Fargo] are authorized to do what they did." (*Id.* at 11:25, 12:1, 8-9).

As previously noted, Judge Underhill recognized that the plaintiffs were raising "two types of general claims, [1] claims that nobody should have gone onto the property to do anything and [2] claims that property was stolen." (*Id.* at 11:24-25, 12:1-2). As to the second type of claim - - that property was stolen - - Judge Underhill stated the following concerning the role of Wells Fargo: "They didn't take anything. They couldn't have because you don't even allege they were on the property at the relevant time. They hired someone [NFR] to go on the property." (*Id.* at 19:24-25, 20:1-2). Plaintiffs' counsel responded that the Amended Complaint alleged that the theft of property occurred "through them [Wells Fargo] or their agents." (*Id.* at 20:4). Judge Underhill rejected the claim that this allegation was sufficient to satisfy the facial plausibility pleading requirement:

> It can't be that you can plausibly allege that Wells Fargo hired somebody to steal property for them. Remember, the agent acts for the principal and the principal is bound to the extent that the agent is acting for the principal. So, to hold Wells Fargo in an agency theory for theft or conversion . . . you have to allege that that theft or conversion was within the scope of the agency that Wells Fargo set up. You haven't even tried to do that and I can't imagine that you can. It's just not plausible that a big bank is going to hire somebody to go in and steal the property out of collateral real estate. The other . . . way is going to be barred because, unless they hired them as the agent to go in and steal property, then by taking an action that was against the law, the agent is acting outside the scope of the agency, by definition. So, you lose Wells Fargo.

(*Id*. at 22:8-24).

The Second Count of the Second Amended Complaint raises a claim of ordinary

-10-

negligence. In part that Count repeats the argument that has already been rejected by Judge Underhill, i.e., that Wells Fargo breached a duty of care arising out of the terms of the mortgage agreement or on the basis of an agency relationship with NFR. The Second Amended Complaint also includes additional facts relating to the Freddie Mac Single Family/Single-Seller/Servicer Guide ("the Guide"). The plaintiffs allege that the Guide provides certain guidelines that Wells Fargo was required to follow pertaining to the servicing of qualifying mortgages, including the Bittingers' mortgage. They further allege that Wells Fargo failed to follow certain specified guidelines governing the suspected abandonment of mortgaged property, including the requirements that the servicer attempt to locate the borrowers and determine the reason for abandonment before taking action to secure the property, and detail actions taken to prevent loss to the property.

As noted above, Judge Underhill concluded that Wells Fargo was authorized by the terms of the mortgage agreement to enter the property and change the locks without any consideration of whether the property had been abandoned. The failure of the Bittingers to make mortgage payments constituted a failure "to perform the covenants and agreements contained in [the mortgage agreement]," and the foreclosure action was a "legal proceeding that might significantly affect Lender's interest in the Property." (Doc. # 48, at 33). Each of these events provided sufficient authority for Wells Fargo to enter the property and change the locks. As expressed by Judge Underhill, "Two of the three conditions precedent are clearly met. You might have an issue of fact on the third one [abandonment] but you only need one. So they clearly had the right to go in there under the contract . . . ." (Doc. # 55, at 15:9-12). Judge Underhill also rejected the plaintiffs' agency theory of negligence against Wells Fargo,

-11-

reasoning that there are no factual allegations that Wells Fargo engaged NFR to steal property and that any actions by NFR beyond the scope of any agency relationship with Wells Fargo would not subject Wells Fargo to liability as a principal.

"The essential elements of a cause of action in negligence are well established: duty, breach of that duty; causation; and actual injury. . . ." *McDermott v. State*, 316 Conn. 601, 609 (2015) (internal quotation marks omitted). "[T]here can be no actionable negligence . . . unless there exists a cognizable duty of care. . . .." *Murdock v. Croughwell*, 268 Conn. 559, 566 (2004) (internal quotation marks omitted). As far as relying on the provisions of the Guide as a basis for a duty owed by Wells Fargo to the Bittingers, "the federal courts that have considered the issue have held that borrowers such as the [Bittingers] are not third-party beneficiaries to the Servicer Guide between Feddie Mac and lenders. . . . The terms of the Servicer Guide make clear that it exists not for the benefit of defaulting borrowers but rather to protect Freddie Mac's interests in its loans which are serviced by other financial institutions." *Wells Fargo Bank, N.A. v. Sinnott*, File No. 2:07-CV-169, 2009 U.S. Dist. LEXIS 94226, at *27, *29 (D. Vt. Aug. 17, 2009). The Court finds that the Guide, which is intended to protect the interests of Freddie Mac and not those of the Bittingers, does not give rise to a duty owed by Wells Fargo to the plaintiffs.[4] Because Judge Underhill previously determined that a negligence claim premised on either the mortgage agreement or an agency relationship between Wells Fargo and NFR, which are the other bases for a duty identified by the plaintiffs, fails as a matter of law, the Court

---

[4]In any event, Judge Underhill concluded that the mortgage agreement authorized Wells Fargo to enter the property and change the locks totally apart from any consideration of abandonment of the property.

concludes that there is no facially plausible ordinary negligence claim against Wells Fargo. For that reason, the defendant Wells Fargo's motion to dismiss is granted as to the ordinary negligence claim.

iii. Negligent Hiring, Training and Supervision

In granting the plaintiffs leave to replead their negligence claim, Judge Underhill responded to an inquiry from plaintiffs' counsel by further articulating that "I'm including negligent hiring as a form of negligence." (Doc. # 55, at 41:20-21). The Second Amended Complaint includes as the Third Count a claim of negligent hiring, training and supervision. That count includes allegations that "Wells Fargo often employs the services of a third party, either as agent or contractor, to assist them in securing a borrower's home, either pre- or post-foreclosure," and that "Wells Fargo is aware of past incidences where said third parties employed by them to secure the properties, have been accused of stealing from the home owners." (Doc. # 48, at 19, ¶¶ 108, 109). That count further alleges that "[u]pon information and belief, they [Wells Fargo] have also been involved with litigation that involved NFR and accused both Wells Fargo and NFR of conduct such as conversion, negligence, theft, and trespass." (*Id*. at 19, ¶ 110).

During the course of an exchange with plaintiffs' counsel at the August 24, 2015 proceeding, Judge Underhill alluded to a negligent hiring claim:

> It can't be that they [Wells Fargo] were negligent because the people that they hired broke the law. That's not a theory of negligence. The theory of negligence is everybody in the industry knew that National Field Representatives were a bunch of thieves, and Wells Fargo knew that and they ignored the risk that National Field Representatives would go in and steal, and in fact that's what happened and, therefore, there's some sort

-13-

> of negligence on behalf of Wells Fargo. You can't allege that,
> I'm sure, so I don't see how you get negligence against Wells
> Fargo. What you're saying it's basically the basis of a
> negligent hiring claim, the employ[er] should know or should
> have known that the person they hired had a history of . . . theft
> or whatever it is. You haven't alleged anything like that.

(Doc. # 55, at 24:6-21). The allegations in the Third Count previously quoted appear to be

responsive to these comments made by Judge Underhill.

   Generally speaking, a party is not obligated to protect another party from the intentional

or criminal acts of a third party. "An exception to the general rule that one has no legal

obligation to protect another may arise when the defendant's own conduct creates or increases

the foreseeable risk that such other person will be harmed by the conduct of a third party,

including the foreseeable criminal conduct of that third party." *Doe v. St. Francis Hospital and

Medical Center*, 309 Conn. 146, 175 (2013). Quoting from the Restatement (Second) of Torts,

the Connecticut Supreme Court further articulated the particulars of this exception:

> "There are . . . situations in which the actor, as a reasonable man, is
> required to anticipate and guard against the intentional, or even
> criminal, misconduct of others." . . . One situation in which the
> actor will be required to guard against the intentional misconduct
> of another is "[w]here the actor acts with knowledge of peculiar
> conditions which create a high degree of risk of [such] intentional
> misconduct."

*Doe*, 309 Conn. at 178-79 (quoting Restatement (Second) of Torts, § 302 B, comment (e)).

   The question is whether the Third Count pleads factual content that is sufficient to allow

the Court to draw the reasonable inference that Wells Fargo "act[ed] with knowledge of

peculiar conditions which create[d] a high degree of risk of . . . intentional misconduct" by

NFR. *Id*. The Court believes that this is a close question, but concludes that the factual

-14-

allegations included in the Third Count are sufficient to survive Wells Fargo's motion to dismiss. In *Bertocki v. Williams*, CV096000929, 2010 Conn. Super. LEXIS 2112 (Conn. Super. Ct. Aug. 16, 2010), the court found that the following allegations were sufficient to plead a cause of action for negligent hiring: the corporate defendant ("company") allowed one of its employees to drive the company's truck, which struck and killed the plaintiff's decedent, when the company knew or should have known that the employee was incompetent to operate the vehicle and did not possess the necessary skills or competence as a truck driver. The plaintiff also alleged that the company had not conducted a background check on the employee to determine his fitness or competence to drive the company's truck. *Bertocki*, 2010 Conn. Super. LEXIS 2112, at *11-12. "Construing the allegations in a manner most favorable to the plaintiff, the court finds that the plaintiff has sufficiently pleaded the requisite factual predicate for a claim of negligent hiring." *Id.*, at *12-13.

While the factual allegations of the plaintiff's Third Count may be a slender reed in support of their negligent hiring, training and supervision claim[5], the Court finds them sufficient to survive the motion to dismiss and proceed to the discovery phase as to this claim against Wells Fargo. The defendant Wells Fargo's motion to dismiss is denied as to the negligent hiring, training and supervision claim.

## B. NFR

The Second Amended Complaint raises the conversion, statutory theft, and negligence

---

[5]The plaintiffs allege in their Second Amended Complaint that Wells Fargo "employed or hired, either as its agent or as an independent contractor, NFR to effectuate the locking out of the Bittinger's [sic] from their home." (Doc. # 48, at 10, ¶ 59).

-15-

claims against NFR that had been included in the first Amended Complaint. NFR now moves

to dismiss these three remaining claims based on the fact that NFR "engaged a third party to

conduct the inspection of Plaintiff's property." (Doc. # 66-1, at 1).  NFR argues that it "cannot

be held liable for the third parties' alleged intentional torts," or "for negligent conduct by its

independent contractors." (*Id.*). NFR further contends that all claims for punitive damages

should be dismissed "because they are based on vicarious liability." (*Id.*).

Although not clearly stated in the motion itself, it is apparent that NFR's motion to

dismiss is brought pursuant to Fed. R. Civ. P. 12(b)(6) on the basis of a claimed "failure to state

a claim upon which relief can be granted." "[T]he general rule is that a district court may not

look outside the complaint and the documents attached thereto in ruling on a Rule 12(b) motion

to dismiss[6] . . . ." *Staehr v. Hartford Financial Services Group, Inc.*, 547 F.3d 406, 426 (2d Cir.

2008). All of the arguments contained in NFR's motion to dismiss are based on the contention

that "NFR did not enter the Plaintiffs' property, but rather contracted with a separate entity,

Home Team, to perform the work [as an independent contractor]." (Doc. # 66-1, at 4). The

Second Amended Complaint makes no reference to Home Team or to an agreement between

NFR and a third party. Rather, in general terms the Second Amended Complaint refers to

actions of "NFR, its agents, representatives or independent contractors" for which the plaintiffs

claim NFR is responsible.

Rule 12 of the Federal Rules of Civil Procedure further provides that:

> If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings

---

[6]A court "may also consider matters of which judicial notice may be taken." *Staehr*, 547
F.3d at 426 (internal quotation marks omitted).

> are presented to and not excluded by the court, the motion must be
> treated as one for summary judgment under Rule 56. All parties
> must be given a reasonable opportunity to present all the material
> that is pertinent to the motion.

Fed. R. Civ. P. 12(d). When a motion to dismiss presents matters outside the pleadings, a district court may either "'exclude the additional material and decide the motion to the complaint alone or it may convert the motion to one for summary judgment . . . .'" *Majid v. Malone*, 95 Civ. 2545 (HB), 1996 U.S. Dist. LEXIS 3515, at *3 (S.D.N.Y. March 26, 1996) (quoting *Fonte v. Board of Managers of Continental Towers Condominium*, 848 F.2d 24, 25 (2d Cir. 1988)). "It is generally accepted that the decision whether to accept or exclude additional material lies within the discretion of the district court." *Id.*

In their opposition to the motion to dismiss, the Bittingers argue, among other things, that "here we do not yet know whether, how or with what supervision Home Team carried out NFR's will and wishes" under any agreement between NFR and Home Team. (Doc. # 69, at 23). Although the discovery deadline set in the current scheduling order has passed, the Court notes that at the end of the August 254, 2015 proceeding, Judge Underhill addressed discovery as to Wells Fargo as follows:

> At this point Wells Fargo is not a party. If a claim is a viable claim
> that's brought, survives a motion to dismiss, then Wells Fargo
> would be treated as a party for purposes of discovery. If that does
> not happen or if the repled claim is dismissed, then Wells Fargo
> will be treated as a nonparty for discovery purposes.

(Doc. # 55, at 43:2-8). Thus, the Court anticipates the likely need for a revised scheduling order following the issuance of this ruling that would allow for additional discovery. One possible area of additional discovery might relate to the relationship between NFR and Home Team. The

-17-

Court also notes that NFR's initial motion to dismiss, filed on April 30, 2015, made no mention of any relationship between NFR and Home Team. Given the circumstances before it at this time, the Court has decided to exclude the matters outside the pleadings presented by NFR in support of its motion to dismiss. Since all of the arguments presented in that motion are based on the matters outside the pleadings, i.e., the contention that "NFR did not enter the Plaintiffs' property, but rather contracted with a separate entity, Home Team, to perform the work [as an independent contractor]"; (doc. # 66-1, at 4); the defendant NFR's motion to dismiss is denied. NFR is, of course, free to raise these arguments in a motion for summary judgment. A summary judgment motion "is the proper procedural device to consider matters outside the pleadings . . . ." *Global Network Communications, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006).

CONCLUSION

For the reasons stated above, the defendant Wells Fargo's motion to dismiss (**doc. # 57**) is **GRANTED IN PART** and **DENIED IN PART**. The case will proceed against Wells Fargo only as to the claim of negligent hiring, training and supervision of NFR.

The defendant NFR's motion to dismiss (**doc. # 66**) is **DENIED**.

SO ORDERED this 21st day of July,  2016.

_____
/s/ DJS
Dominic J. Squatrito
United States District Judge

-18-